# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| ALEX NELIS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:17-cv-03091-TWP-DML |
| | ) |
| GEPA HOTEL OPERATOR INDIANAPOLIS LLC, d/b/a HILTON GARDEN INN INDIANAPOLIS AIRPORT, PARK HOTELS & RESORTS INC. d/b/a HILTON HOTELS, SCHAHET HOTELS INC. d/b/a HILTON GARDEN INN INDIANAPOLIS AIRPORT, | ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## ENTRY ON MOTION TO DISMISS

This matter is before the Court on Defendant Schahet Hotels, Inc., d/b/a Hilton Garden Inn Indianapolis Airport's ("Schahet") Motion to Dismiss Plaintiff Alex Nelis's ("Nelis") Complaint. ([Filing No. 17](#).) Nelis alleges that he was discriminated against on the basis of sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and was terminated in retaliation for reporting sex discrimination. For the reasons stated below, Schahet's Motion is **denied**.

## I. BACKGROUND

The following facts from Nelis's Complaint are accepted as true, and all favorable inferences are drawn in favor of Nelis for purposes of this Motion to Dismiss. *See Killingsworth v. HSBC Bank*, 507 F.3d 614, 618 (7th Cir. 2007). On or about June 2016, Hilton Garden Inn Indianapolis Airport ("Hilton") hired Nelis. ([Filing No. 1 at 3](#).) Nelis is a male, but he does not follow traditional gender norms. Immediately upon beginning employment with Hilton, Nelis's

co-workers began making disparaging comments such as "sissy", "queen", "fag", and "tranny". The housekeeping manager subjected Nelis to similar comments as well. *Id.* ("The housekeeping manager would tell Mr. Nelis 'not to be a girl, but to be a man'").

Nelis reported the comments and slurs to management, but the harassing behavior continued. Nelis was terminated following an incident in which he reported finding a bed bug in one of the rooms to his housekeeping manager. Maintenance was sent to the room, in which the maintenance manager met with the lead housekeeper. The maintenance manager advised Nelis that he was being terminated for "creative differences". *Id.* at 4. Nelis alleges that the maintenance manager and lead housekeepers engaged in frequent and regular discrimination against him on the basis of sex, including using slurs and derogatory terms. On September 9, 2016, Nelis filed charges of sex and gender discrimination with the Equal Employment Opportunity Commission ("the EEOC Charge"), alleging discrimination on the basis of being a transgender and because he does not conform to gender norms. On September 6, 2017, Nelis filed a Complaint with this Court. ([Filing No. 1](#).)

## II. LEGAL STANDARD

When reviewing a 12(b)(6) motion, the Court takes all well-pleaded allegations in the complaint as true and draws all inferences in favor of the plaintiff. *Bielanski v. Cnty. of Kane*, 550 F.3d 632, 633 (7th Cir. 2008) (citations omitted). However, the allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009)

2

(citations omitted). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

### III. **DISCUSSION**

As a preliminary matter, Schahet contends that the EEOC Charge is not against Schahet; rather it is against Hilton, and the Complaint fails to adequately allege Schahet to be Nelis's former employer, meriting dismissal. ([Filing No. 18 at 4](#).) Nelis responds that he listed Hilton with the address of his employer (located at the Indianapolis Airport) on the EEOC Charge, and that attached to his Complaint is a Notice of Rights indicating the same address. ([Filing No. 26 at 4](#).) Moreover, upon drafting the Complaint, Nelis searched the Indiana Secretary of State website and found no registration by the name of "Hilton Garden Inn Indianapolis Airport", and there are numerous entities doing business with the name/word Hilton in their title. As a result, Nelis sued all possible entities that may be the parent company of his employer, Hilton Garden Inn Indianapolis.

"The Seventh Circuit has also held that multiple entities may be considered an employee's 'employer' for the purposes of Title VII liability where an affiliated corporation 'directed the discriminatory act, practice, or policy of which the employee is complaining.'" *Tritsis v. BankFinancial Corp.,* No. 16 C 02052, 2016 WL 5171785, at *2 (N.D. Ill. Sept. 21, 2016) (quoting *Tamayo v. Blagojevich*, 526 F.3d 1074, 1088 (7th Cir. 2008)) (explaining "that courts must look to the 'economic realities' of the employment relationship as well as the degree of control.") Schahet challenges the Complaint's inclusion of three different defendants without identifying which one was Nelis's employer. ([Filing No. 18 at 5](#).) Citing *Tritsis*, Schahet additionally explains that the "Complaint does not contain sufficient fact allegations demonstrating Schahet Hotels, Inc.,

3

exerted control over Nelis and qualified as his employer." Nelis distinguishes *Tritsis* on its facts by noting that the *Tritsis* court dismissed an alleged defendant employer because an exhibit attached to the Complaint belied the plaintiff's joint employer theory. ([Filing No. 26 at 5](#).) The Court agrees. Nelis persuasively suggests that on reply Schahet should answer the proper line of inquiry which would be "whether or not Schahet Hotels, Inc. has a hotel located at 8910 Hatfield Dr., Indianapolis[,] IN 46241 with the name Hilton contained in its title." *Id.* In reply, Schahet does not answer whether or not it owns a hotel located at the indicated address, rather noting that this is not discovery where Schahet has to answer those questions while proposing discovery-related solutions that Nelis could have taken to confirm the proper defendant. ([Filing No. 28 at 5](#).) The Court is not persuaded. At this stage, the Court accepts as true that Schahet Hotels, Inc. is d/b/a Hilton Garden Inn Indianapolis Airport until Schahet offers evidentiary support to the contrary.

Turning to the merits of Schahet's Motion to Dismiss, Schahet contends that under *Ulane v. Eastern Airlines,* 742 F.2d 1081, 1084 (7th Cir. 1984), the Seventh Circuit determined that "Title VII does not protect transsexuals from discrimination." ([Filing No. 18 at 2](#).) Nelis responds that he is not a transsexual, and that the Complaint does not allege that he is a transsexual. ([Filing No. 26 at 2](#).) In *Ulane*, a pilot was terminated after sex reassignment surgery. The Seventh Circuit held that the plaintiff was not discriminated against on the basis of being a female, rather she was discriminated on the basis of being a transsexual in which it held was not protected under Title VII. *Ulane,* 742 F.2d at 1087. The court's holding rested on the determination that "sexual identity" is not a protected class. *Ulane* was decided in 1984. Nelis relies on *Hively v. Ivy Tech Community College of Indiana*, in asserting that "gender stereotyping falls within Title VII's prohibitions against sex discrimination even if the discrimination is by an individual of the same

4

sex." 853 F.3d 339, 340-41 (7th Cir. 2017). At the outset of *Hively*, the Seventh Circuit's most recent case relevant to this issue, the court noted, "[i]n this case, we have been asked to take a fresh look at our position in light of developments at the Supreme Court extending over two decades.". While the Seventh Circuit did not explicitly overrule *Ulane* in *Hively*[1], it defined the statutory interpretation question at issue in that case that has ramifications for this case: "We must decide instead what it means to discriminate on the basis of sex, and in particular, whether actions taken on the basis of sexual orientation are a subset of actions taken on the basis of sex." *Id.* at 343.

The plaintiff in *Hively* alleged that she was terminated on the basis of sex being that because she was married to a woman, an adverse employment decision was made based on her non-conformance to gender norms, *i.e.,* a woman in a heterosexual marriage. "Viewed through the lens of the gender non-conformity line of cases, Hively represents the ultimate case of failure to conform to the female stereotype (at least as understood in a place such as modern America, which views heterosexuality as the norm and other forms of sexuality as exceptional)". *Id.* at 346. The case was heard *en banc* and the court noted that the panel described the line between a gender non-conformity claim and one based on sexual orientation as non-existent. The court made the comparison relying on Supreme Court cases in the context of "claims brought by women who were rejected for jobs in traditionally male workplaces, such as fire departments, construction, and policing." *Id.* ("Any discomfort, disapproval, or job decision based on the fact that the complainant—woman or man—dresses differently, speaks differently, or dates or marries a same-sex partner, is a reaction purely and simply based on sex. That means that it falls within Title VII's prohibition against sex discrimination, if it affects employment in one of the specified ways.").

---

[1] The *Hively* case explicitly overruled *Doe v. City of Belleville, Ill.*, 119 F.3d 563, *Hamm v. Weyauwega Milk Prods*. 332 F.3d 1058, *Hamner v. St. Vincent Hosp. and Health Care Ctr., Inc.,* 224 F.3d 701, and *Spearman v. Ford Motor Co.,* 231 F.3d 1080.

In interpreting Title VII's extension to cover sexual orientation as a subset of discrimination on the basis of sex, the Seventh Circuit relied on a line of Supreme Court cases.

> *Price Waterhouse* held that the practice of gender stereotyping falls within Title VII's prohibition against sex discrimination, and *Oncale* clarified that it makes no difference if the sex of the harasser is (or is not) the same as the sex of the victim. Our panel frankly acknowledged how difficult it is "to extricate the gender nonconformity claims from the sexual orientation claims.

*Id.* at 342. The *Hively* court also noted that the prohibition against sex discrimination has reached sexual harassment. *Id.* at 345 (citing *Meirtor Sav. Bank, FSB v. Vinson*, 477 U.S. 57 (1986).[2] The Supreme Court case, *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), discussed by the Seventh Circuit is instructive to the case at hand. "The four justices in the plurality and the two justices concurring in the judgment recognized that Hopkins had alleged that her employer was discriminating only against women who behaved in what the employer viewed as too "masculine" a way—no makeup, no jewelry, no fashion sense." *Hively,* 853 F.3d at 346. Finally, in reversing the trial court's holding that the plaintiff could not have been discriminated against on the basis of sex, the Seventh Circuit concluded with –

> [t]he logic of the Supreme Court's decisions, as well as the common-sense reality that it is actually impossible to discriminate on the basis of sexual orientation without discriminating on the basis of sex, persuade us that the time has come to overrule our previous cases that have endeavored to find and observe that line.

*Id.* 350-51. Judge Posner concurred in the judgment, but wrote "to explore an alternative approach that may be more straightforward." *Id.* at 352. (Posner, J. concurring).

> But it has taken our courts and our society a considerable while to realize that sexual harassment, which has been pervasive in many workplaces (including many Capitol Hill offices and, notoriously, Fox News, among many other institutions), is a form of sex discrimination. It has taken a little longer for realization to dawn that discrimination based on a woman's failure to fulfill stereotypical gender roles is also a form of sex discrimination. And it has taken still longer, with a substantial

---

[2] "It is quite possible that these interpretations may also have surprised some who served in the 88th Congress. Nevertheless, experience with the law has led the Supreme Court to recognize that each of these examples is a covered form of sex discrimination." *Hively v. Ivy Tech Cmty. Coll. of Indiana,* 853 F.3d 339, 345 (7th Cir. 2017)

6

> volume of cases struggling and failing to maintain a plausible, defensible line between sex discrimination and sexual-orientation discrimination, to realize that homosexuality is nothing worse than failing to fulfill stereotypical gender roles.

*Id.* at 355. Turning back to the facts of this case, as noted previously, Nelis is not a transsexual. Thus, Nelis persuasively contends, that *Ulane*, a case only addressing whether or not Title VII protects transsexuals, transgenders, or homosexuals is not at issue here. ([Filing No. 26 at 3](#).) Nelis alleges that he was discriminated against by a fellow male co-worker for not meeting stereotypical expectations of what a man should behave like. ([Filing No. 26 at 2](#).) The Complaint alleges that Nelis was called "sissy" and "queen" among other slurs. ([Filing No. 1](#).) Nelis argues that these comments indicated that his co-workers perceived him to be more feminine than masculine in that he failed to behave in line with a masculine male gender norm. In response, Schahet contends that the allegations in Nelis's Complaint demonstrate a claim for gender identity, rather than discrimination based on sex or sexual orientation. The Court disagrees. While gender identity could be an issue gleaned from the Complaint, the Seventh Circuit noted in *Hively*, that discrimination on the basis of failure to adhere to stereotypical gender norms is prohibited under Title VII, *i.e.,* sex discrimination, language which Nelis has alleged in his Complaint. The Complaint squarely alleges a gender non-conformity claim, which the Seventh Circuit and Supreme Court cases have recognized. Moreover, Schahet misconstrues the facts of *Hively*. ([Filing No. 28 at 3-4](#).) ("The *Hively* plaintiff made no allegation that she did not follow traditional gender norms or that she was discriminated against because of her gender identity. She alleged only that she was denied full-time employment because of her sexual orientation.")

As noted previously, *Hively* relied on a line of gender non-conformity Supreme Court cases, in alleging that she was discriminated against because she was not a heterosexual female— a female gender norm. Schahet is correct in that the *Hively* court did not have the issue of gender

7

identity before it; however, the Complaint does not allege a gender identity claim. (Filing No. 28 at 4.) And even if it could be construed to contain a gender identity claim, the Seventh Circuit explicitly recognized that gender non-conformity was protected under Title VII's sex prohibition. In *Hively*, sexual orientation was the specific behavior at issue for gender non-conformity. However, the *Hively* court examined gender conformity with regards to masculine and feminine stereotypes associated with being a male and female respectively, which is the behavior at issue in this case. At this stage of litigation, and finding that the case law does not foreclose Nelis's claim based on sex discrimination, the Court determines that Nelis's Complaint is sufficient to state a plausible claim for relief. Accordingly, Schahet's Motion to Dismiss is **denied**.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Schahet's Motion to Dismiss is **DENIED** (Filing No. 17).

**SO ORDERED**.

Date: 9/24/2018

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

David W. Stewart
STEWART & STEWART
DWS@getstewart.com

Heather R. Falks
STEWART & STEWART
heatherf@getstewart.com

Paige Moray Neel
CLAUSEN MILLER P.C.
pneel@clausen.com

Daniel L. Polsby
CLAUSEN MILLER PC
dpolsby@clausen.com